**IN RE: Angelique M. SHARP, Debtor.**

**Landmark Credit Union, Plaintiff,**

**v.**

**Angelique M. Sharp, Defendant.**

**No. 16 B 9845**
**No. 16 A 248**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

October 21, 2016

Attorney for plaintiff Landmark Credit Union: Andrea Marie Lang, Lang Law, Ltd., Crystal Lake, IL

Attorney for defendant Angelique M. Sharp: James J. Burns. Jr., The Burns Law Firm P.C., Chicago, IL

## MEMORANDUM OPINION

A. Benjamin Goldgar, United States Bankruptcy Judge

Before the court for ruling is the motion of defendant Angelique M. Sharp ("Sharp") to dismiss the four-count adversary complaint of plaintiff Landmark Credit Union ("Landmark"). The complaint alleges that Sharp fraudulently induced Landmark to make a car loan, never made a payment on the loan, and then hid the car in another state when Landmark tried to recover it. Landmark objects to Sharp's discharge. Alternatively, Landmark objects to the dischargeability of her debt.

For the following reasons, Sharp's motion to dismiss the complaint will be denied.

### 1. Jurisdiction

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

### 2. Background

On a Rule 12(b)(6) motion, all well-pleaded allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the non-movant. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 612 (7th Cir. 2014). Exhibits attached to the complaint are also considered on the motion. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *see* Fed. R. Civ. P. 10(c) (made applicable by Fed. R. Bankr. P. 7010) (stating that exhibits to a pleading are "part of the pleading for all purposes").

The complaint and exhibits allege the following facts. On June 15, 2015, Sharp bought a 2016 Dodge Viper from Liberty Auto City, executing a retail installment contract. (Compl. ¶ 4; Ex. A). The sale price was $89,000. (Compl. Ex. A). Sharp made a down payment of $3,000 and financed the rest with a loan from Landmark. (Compl. ¶ 10; Ex. A). To obtain the loan, Sharp filled out a credit application, submitting it to Landmark. (Compl. ¶¶ 6–10).

On the application, Sharp represented that she lived at 409 Lincoln Avenue, Ingleside, Illinois, and had lived there for seven years. (Compl. ¶ 9; Ex. C). She represented that she had neither a rent nor a mortgage payment. (Compl. ¶ 9; Ex. C). As proof of the Lincoln Avenue address, she provided a driver's license showing it as her home address. (Compl. ¶ 9).

Sharp also represented that she had been employed for eleven years as a manager at Crossroads of Ivanhoe, Inc. (presumably a restaurant or tavern) in Mundelein, Illinois, and had an annual salary of $175,000. (Compl. ¶¶ 6, 7; Exs. C, D). As proof of her employment and salary, she submitted what purported to be an "earnings statement" from Crossroads showing gross pay of $3,625 for the week of May 18–24, 2015. (Compl. ¶ 8; Ex. D).

In reliance on the application, the driver's license, and the "earnings statement," Landmark extended credit to Sharp to buy the car. (Compl. ¶¶ 10, 37). Sharp's monthly payment on the loan was $1,585. (Compl. Ex. A).

Sharp's representations to Landmark were false. Sharp did not live on Lincoln Avenue in Ingleside; she lived at 4424 N. Christina Avenue in Chicago. (Compl. ¶ 23). Far from having no mortgage or rent payments, she had a $160,000 mortgage on the Christina Avenue property with a $1,620 monthly payment. (Id. ¶ 22). She was not employed as a manager at Crossroads of Ivanhoe but worked there as a server. (Id. ¶ 20). Her salary was not $175,000 but was about $13,000 (her net pay was $10,236). (Id. ¶ 20). In 2014 and 2015, she had earned $14,000 and $13,134, respectively. (Id. ¶ 31).

Sharp knew her representations to Landmark were false—she had to know the truth about her employment, salary, address, and mortgage payment, and she had to know her gross monthly pay of $1,053 (and certainly her net pay of $897) was insufficient to make a $1,585 monthly car payment—and she made the representations with an intent to deceive Landmark into making the loan. (Id. ¶¶ 24, 36). Within days of her purchase of the Dodge Viper, Sharp also bought a 2015 Cadillac Escalade and a 2015 Dodge Ram 2500. (Id. ¶¶ 17, 36). (She already owned a 2013 Ford Edge and a 2013 Yamaha SX190 boat and trailer. (Id. ¶ 17)).

Sharp made no payments to Landmark on the loan (id. ¶ 11), and on July 30 Landmark declared the loan in default (id. ¶ 12). But when Landmark demanded the car's return, Sharp refused to return it.

(Id. ¶¶ 12, 40). Instead, she moved the car to Missouri and hid it there. (Id. ¶¶ 14, 41, 44). Repeated attempts by Landmark to locate the car met with failure until November 2015, when Landmark was at last able to recover the car through information obtained from a third party related to Sharp who said he did not "wish to be a party to [her] criminal scheme." (Id. ¶¶ 42–43).[1]

As of March 2016, Sharp owed Landmark $21,677.95 on the contract. (Id. ¶ 16).[2]

On March 22, 2016, Sharp filed a chapter 7 bankruptcy petition, and Landmark commenced this adversary proceeding. Landmark's complaint has four counts. Counts I and II are fraud claims. Count I alleges that Sharp owes Landmark a debt nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A). Count II alleges that the debt is nondischargeable under section 523(a)(2)(B), 11 U.S.C. § 523(a)(2)(B). Count III is an objection to Sharp's discharge under section 727(a)(2)(A), 11 U.S.C. § 727(a)(2)(A). Count IV is a claim for attorney fees under Landmark's contract with Sharp and under the Illinois Motor Vehicle Act.

Sharp now moves to dismiss the complaint. The motion consists of twelve numbered paragraphs and is not directed to any particular count. (The complaint's counts are never mentioned.) It appears, however, that Sharp is arguing that Counts I–III should be dismissed under Rule 12(b)(6) Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. Bankr. P. 7012(b)), for failure to state a claim. (The claim in Count IV is not discussed). Sharp

---

1. Landmark alleges on information and belief that the car was used for "illegal interstate purposes." (Compl. ¶ 15). Those purposes are not described.

2. Landmark calls this a "deficiency balance" (Compl. ¶ 16), suggesting the car was sold after Landmark finally located and repossessed it.

also appears to argue that Counts I and II should be dismissed for failure to plead fraud with particularity under Rule 9(b), Fed. R. Civ. P. 9(b) (made applicable by Fed. R. Bankr. P. 7009), although she never cites the rule.

Landmark opposes the motion.

### 3. Discussion

Sharp's motion will be denied. The complaint rather obviously states a claim that Sharp owes Landmark a debt for money obtained through fraudulent misrepresentations. Although Landmark cannot maintain a claim under both section 523(a)(2)(A) and section 523(a)(2)(B) based on the same written misrepresentations, Landmark has a claim under one or the other, and nothing required Landmark to plead legal theories in any event. The fraud claim is also pled with enough particularity to satisfy Rule 9(b). As for Count III, that count plainly states a claim under section 727(a)(3).

### a. Counts I and II

■ Counts I and II state claims. The underlying claim is based on a debt for money obtained through fraud, and that claim is perfectly well pled. The two counts allege inconsistent legal theories, and Landmark will not be able to prevail on both. But since the underlying claim (in the relevant sense of the underlying facts) is sufficient, there is no reason to decide at the pleading stage which legal theory is likely to be successful. Landmark has stated a claim under either section 523(a)(2)(A) or section 523(a)(2)(B), and the claim is pled in enough detail for Rule 9(b) purposes.

#### i. Rule 12(b)(6)

■ To survive a Rule 12(b)(6) motion, a complaint need only clear two "easy-to-clear hurdles." *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir.

2007). First, the complaint must contain enough factual detail to give the defendant fair notice of the claim under Rule 8(a). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Specific facts are unnecessary, *Olson v. Champaign County,* 784 F.3d 1093, 1098 (7th Cir. 2015), but some facts must support each element of the claim, *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Defender Sec. Co. v. First Mercury Ins. Co.,* 803 F.3d 327, 334 (7th Cir. 2015); *Swanson v. Citibank, N.A.,* 614 F.3d 400, 405 (7th Cir. 2010).

■ Second, the claim must be plausible—meaning the allegations must raise the plaintiff's right to relief above a "speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *see also Kubiak v. City of Chicago,* 810 F.3d 476, 480 (7th Cir. 2016). To establish plausibility, a plaintiff need only "include enough details about the subject-matter of the case to present a story that holds together." *Runnion v. Girl Scouts of Greater Chi.,* 786 F.3d 510, 526 (7th Cir. 2015) (internal quotations omitted). Plausibility "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations." *Huri v. Office of the Chief Judge,* 804 F.3d 826, 833 (7th Cir. 2015).

#### ii. The Section 523(a)(2) Theories

The complaint here alleges a single nondischargeability claim: that Sharp obtained a loan from Landmark to buy a car by knowingly and intentionally making false written representations in her credit application, and a portion of the loan remains unpaid. Although this is a single claim (since a "claim" consists of the "underlying factual events" rather than "the legal theories advanced," *Matrix IV, Inc. v. American Nat. Bank & Trust Co.,* 649

F.3d 539, 548 (7th Cir. 2011)), the claim is alleged in two separate counts: one that invokes section 523(a)(2)(A), another that invokes section 523(a)(2)(B).

Landmark's two theories bear some similarities to each other, but in fact, they are separate as well as inconsistent. Section 523(a)(2)(A) excepts from discharge debts for (among other things) "money ... obtained by false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's ... financial condition." 11 U.S.C. § 523(a)(2)(A). To establish the exception, the creditor must prove (1) the debtor made a false representation or omission that he either knew was false or made with reckless disregard for its truth, (2) the debtor made the misrepresentation or omission with an intent to deceive or defraud, and (3) the creditor justifiably relied on the misrepresentation or omission. *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011); *Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010).

Section 523(a)(2)(B), on the other hand, excepts from discharge a debt for (among other things) money obtained by "a statement in writing that is materially false respecting the debtor's ... financial condition." 11 U.S.C. § 523(a)(2)(B). To establish this exception, the creditor must prove the debtor made a materially false written statement about his financial condition, the debtor made the false written statement with an intent to deceive, and the creditor reasonably relied on the false statement." *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000); *In re McFarland*, 84

F.3d 943, 946 (7th Cir. 1996); *In re Sheridan*, 57 F.3d 627 (7th Cir. 1995).

Both exceptions are based on fraud and have some elements in common, but they are by no means the same. The critical difference for purposes of this decision is that a false written statement of the debtor's "financial condition" will support an exception to discharge only under section 523(a)(2)(B). Section 523(a)(2)(A) not only does not apply to statements of that kind but specifically excludes them: it applies to statements "other than a statement respecting the debtor's ... financial condition." 11 U.S.C. § 523(a)(2)(A). In short, the two exceptions are "mutually exclusive." *Minnesota Dep't of Empl't & Econ. Dev. v. Sanderson (In re Sanderson)*, 509 B.R. 206, 209 (Bankr. W.D. Wis. 2014); *Rutili v. O'Neill (In re O'Neill)*, 468 B.R. 308, 343 (Bankr. N.D. Ill. 2012).[3]

Landmark's complaint pleads every other element of a section 523(a)(2) claim, whether the claim is one under (A) or (B). Landmark alleges that Sharp made false written statements in her application for a car loan, statements that were material. *See North Shore Community Bank & Trust Co. v. Carlson (In re Carlson)*, Nos. 08 B 22322, 09 A 231, 2011 WL 666307, at *5 (Bankr. N.D. Ill. Feb. 14, 2011) (discussing materiality). Landmark alleges that Sharp knew the statements were false and made them intending to deceive. *See Financial Pac. Leasing, LLC v. Kilaru (In re Kilaru)*, 552 B.R. 806, 814–15 (Bankr. N.D. Ill. 2016) (discussing intent). Landmark alleges that it relied on the statements and that its reliance was not only justifiable but also reasonable. *See id.* at 812–13 (discussing reasonable reliance).[4]

---

**3.** Because section 523(a)(2)(B) is the sole dischargeability exception for debts resulting from statements about the debtor's financial condition, and because that section applies only to written statements, debts resulting from false oral statements about a debtor's

financial condition are dischargeable. *Stelmokas v. Kodzius*, 460 Fed.Appx. 600, 603 (7th Cir. 2012); *Sullivan v. Glenn (In re Glenn)*, 502 B.R. 516, 532 (Bankr. N.D. Ill. 2013).

**4.** These basic elements differ slightly depending on whether the claim is one under section

Whether Landmark's claim falls under (A) or (B) therefore depends on whether Sharp's misrepresentations concerned her "financial condition." Courts are split on the meaning of the phrase, with some taking the narrow view that the statement "must paint a picture about the debtor's *overall* financial health," and others taking the view that any statement conveying "significant information about the debtor's finances" is enough. *Stelmokas*, 460 Fed. Appx. at 603. The Seventh Circuit has yet to take a position. *See id.* at 604. As a rule, bankruptcy courts in this circuit tend to take the narrow view. *See id.*[5]

But the current motion offers no occasion to determine whether Landmark's claim is an (A) claim or a (B) claim. That is because Landmark unquestionably has a claim under (A) or (B). If Sharp's misrepresentations concerned her financial condition, Landmark's claim falls under (B). If they did not, the claim falls under (A). Since Landmark has a viable claim either way, determining the precise nature of the claim is a waste of time—at least at the pleading stage. Landmark had no obligation to identify her legal theories and cite Code provisions in any event. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 783 (7th Cir. 2015) (noting that "plaintiffs are not required to plead specific legal theories"); *Whitaker v. Milwaukee County*, 772 F.3d 802, 808 (7th Cir. 2014).

In arguing for dismissal, Sharp contends the complaint fails to set forth how and why Landmark relied on the information in her credit application. Sharp is mistaken. Landmark alleges that it extended credit to Sharp in reliance on the information, and why it did so is readily evident: the information suggested—falsely—that Sharp had the wherewithal to repay the loan.

Sharp next argues that the complaint fails to cite "any specific fact" demonstrating her intent to deceive. Again, Sharp is mistaken. Wrongful intent for purposes of section 523(a)(2) can be inferred not only from direct evidence (the kind Sharp means) but also "from a false representation which the debtor knows or should know will induce another to make a loan." *Sheridan*, 57 F.3d at 633 (internal quotation omitted). Sharp should have realized that Landmark wanted to know about her employment, salary, residence, and financial obligations to determine whether she was a good credit risk.

Sharp next notes that a breach of contract will generally not support a claim under section 523(a)(2)(A) because a false promise is generally not a false representation for purposes of that section. Sharp is right. *See, e.g.,* Santiago v. Hernandez (In re Hernandez), 452 B.R. 709, 723 (Bankr. N.D. Ill. 2011). But Landmark's claim is not based on her mere failure to comply with the contract and so on a false promise. The claim is based on false representations of present fact that caused Landmark to extend credit. *See id.* (noting that the false representation must "relate to a present or past fact"). The claim is not one for promissory fraud.

523(a)(2)(A) or (B). Section 523(a)(2)(B) is stricter, requiring the representation to have been "materially false" rather than simply "false" and requiring the creditor's reliance to have been "reasonable" rather than merely "justifiable." Landmark's complaint alleges material falsity and reasonable reliance for purposes of section 523(a)(2)(B). Because it does, the complaint alleges the more relaxed elements of section 523(a)(2)(A).

5. The undersigned judge has taken that view. *See Broquet v. Zarkhin*, Nos. 12 B 38907, 12 A 1955, 2013 WL 5591937, at *7 (Bankr. N.D. Ill. Oct. 10, 2013); *Bednarsz v. Brzakala (In re Brzakala)*, 305 B.R. 705, 709 (Bankr. N.D. Ill. 2004).

As her last point, Sharp urges that Landmark has not alleged actual fraud. Sharp is right about that, as well. But Landmark has not alleged actual fraud because its claim is not an actual fraud claim. The claim is based on Sharp's false representations in her credit application. Section 523(a)(2)(A) describes not one but three separate grounds for nondischargeability. One is actual fraud; another is false representation. (The third is false pretenses.) *Wachovia Sec., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 668 (Bankr. N.D. Ill. 2010). A creditor can assert a claim based on any of the three. That Landmark has alleged a false representation claim does not open the claim up to dismissal because Landmark did not allege actual fraud.

Because Landmark has stated a claim under either section 523(a)(2)(A) or section 523(a)(2)(B), and because deciding which legal theory is correct would be pointless at this stage, Sharp's motion to dismiss Counts I and II for failure to state a claim will be denied.

### iii. Rule 9(b)

Nor will those counts be dismissed for failure to plead fraud with sufficient particularity. Landmark has provided enough detail to satisfy Rule 9(b).

Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Particularity means the who, what, when, where, and how: the first paragraph of any newspaper story." *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996) (internal quotation omitted); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014); *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). How much detail is necessary depends on the facts of the case. *Camasta*, 761 F.3d at 737; *AnchorBank*, 649 F.3d at 615.

Landmark's complaint in this case spells out the who (Sharp); the what (misrepresentations of personal, financial, and employment information); the when (on June 15, 2015); the where (Liberty Auto City in Libertyville, Illinois); and the how (on the credit application she completed and on an accompanying earnings statement). The information in the complaint is more than enough to satisfy the twin concerns underlying the Rule: to ensure the defendant has notice of the claim and the claim is asserted responsibly, *see Mannheim Auto. Fin. Servs. v. Park (In re Park)*, 314 B.R. 378, 383 (Bankr. N.D. Ill. 2004). If Landmark should have pled something it has not, Sharp fails to say what that something might be.

Because the complaint complies with Rule 9(b), Sharp's motion to dismiss Counts I and II under Rule 9(b) will be denied.

### b. Count III

Just as Counts I and II state claims, Count III states a claim as well. Count III alleges that Sharp moved the car to Missouri and hid it there with an intent to hinder, delay, or defraud Landmark, her creditor. Those allegations state a claim under section 727(a)(2)(A) to deny Sharp's discharge.

Section 727(a)(2)(A) bars the discharge of a debtor who, "with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). To satisfy this exception, two elements must be present within a year of the petition date: "an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)." *In*

*re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd sub nom. Kontrick v. Ryan*, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (internal quotation omitted); *MWRD Employees' Credit Union v. Frazier (In re Frazier)*, 551 B.R. 410, 423 (Bankr. N.D. Ill. 2016); *Campbell v. Campbell (In re Campbell)*, 475 B.R. 622, 633 (Bankr. N.D. Ill. 2012).

Landmark has pled both elements. First, the complaint alleges concealment. It says that after Sharp refused to surrender the car, Landmark made numerous attempts to find it without success. That, Landmark asserts outright, was because Sharp had "concealed the [car] in the State of Missouri." (Compl. ¶ 41). Landmark adds that it was ultimately able to find the car only through the aid of a third party who "physically guided Landmark's agents" to the car's location. (*Id.* ¶ 43). These allegations describe a classic case of concealment.

Second, the complaint alleges facts suggesting Sharp concealed the car with an intent to hinder, delay or defraud Landmark, her creditor. That inference arises from (a) Sharp's misrepresentations at the time she bought the car; (b) her failure to make any payments on the loan from Landmark; and most important (c) her refusal to comply with Landmark's demands to give up the car, together with her decision to move the car to another state and hide it there. These allegations are more than sufficient to suggest an intent to hinder or delay, and perhaps even defraud, Landmark. *See Coyle v. Coyle (In re Coyle)*, 538 B.R. 753, 765–66 (Bankr. C.D. Ill. 2015) (noting that "hindering" simply means impeding or obstructing collection efforts, and "delaying" means postponing those efforts).

Sharp complains that Landmark has not alleged greater detail about Sharp's refusal to surrender the car, Landmark's efforts to recover it, or the identity of the mysterious "third party" who gave away the car's location. True. But Landmark had no obligation to plead that level of detail. *See Huri v. Office of the Chief Judge*, 804 F.3d 826, 832 (7th Cir. 2015) (noting that "[s]pecific facts are unnecessary"); *Olson*, 784 F.3d at 1098. As it stands, the complaint alleges enough to give Sharp notice of Landmark's claim, and the story certainly "holds together." *See Runnion*, 786 F.3d at 526.

Because Count III of Landmark's complaint states a claim under section 727(a)(2)(A), Sharp's motion to dismiss that count under Rule 12(b)(6) will be denied.

### 4. Conclusion

For these reasons, the motion of defendant Angelique M. Sharp to dismiss the adversary complaint of plaintiff Landmark Credit Union is denied. A separate scheduling order will be entered.